IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **FRANCISCAN UNIVERSITY OF STEUBENVILLE**, *et al.*, | : : : | |
| | : | **Case No. 2:12-CV-440** |
| **Plaintiffs,** | : : | **JUDGE ALGENON L. MARBLEY** |
| v. | : : | |
| **KATHLEEN SEBELIUS**, *et al.*, | : : | Magistrate Judge Mark Abel |
| **Defendants.** | : : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter comes before the Court on all Defendants' Joint Motion to Dismiss for Lack of Jurisdiction ("the Motion") (Doc. 23). For the reasons set forth herein, Defendants' Motion is **GRANTED**. This action is **DISMISSED** in its entirety.

### II. BACKGROUND

#### A. The Parties

Plaintiffs, two Roman Catholic, non-profit organizations, bring this action challenging the legality of the "Patient Protection and Affordable Care Act" ("ACA"), Pub. L. No. 111 – 148, 124 Stat. 119 (2010), and its implementing regulations. Plaintiff Franciscan University of Steubenville ("Franciscan") instructs approximately 2,500 students in "a Catholic educational environment" and has 450 employees. *Plaintiffs' Memorandum in Opposition*, Doc. 31 at 7. Franciscan accepts students "of all faiths and creeds" and "does not know the religious makeup of its non-faculty employees." *Id*. Its employee health plan is "grandfathered" under the ACA, and thus unaffected by the ACA's Mandate. *Id*.

Plaintiff Michigan Catholic Conference ("MCC") is a Roman Catholic advocacy group that "sponsors and administers several benefits programs" for employees of Michigan's seven Roman Catholic dioceses, as well as Roman Catholic schools and charities across Michigan. *Id*. The primary benefit program implicated by this case is the "Michigan Catholic Conference Amended and Restated Group Health Benefit Plan for Employees – Revised ("the MCC Plan"). *Id*. MCC alleges the MCC Plan lost "grandfathered" status under the ACA due to recent changes to the benefits program. *Id*.

Defendants are various officials, in their official capacities, and departments of the United States Government charged with enforcing the ACA.

### B. Relevant Provisions of the Affordable Care Act

The ACA, with its accompanying regulations, requires "all group health plans and health insurance issuers that offer non-grandfathered group or individual health coverage to provide coverage for certain recommended preventive services without cost-sharing." *Defendants' Motion to Dismiss*, Doc. 23-1 at 1. These recommended services include reproductive health services specific to women. Defendant Department of Health and Human Services ("HHS") commissioned the Institute of Medicine ("IOM"), a part of the National Academy of Sciences funded by Congress, to report on what those reproductive services should include. *Id*. at 5. Among the services recommended by the IOM Report, and at issue in this case, are "the full range of [FDA]-approved contraceptive methods, sterilizations procedures, and patient education and counseling for women with reproductive capacity." *Id*. at 6. Significant to note is that a health plan in which an individual was enrolled on March 23, 2010 remains unchanged by the ACA, unless said plan "or its sponsor enters into a new policy, certificate, or contract of

insurance after March 23, 2010 that is effective before November 15, 2010," in which case the plan ceases to be grandfathered and is subject to the ACA.  45 C.F.R. § 147.140.

In recognition of the fact that a number of religious groups oppose the use of contraception and sterilization, Defendants included an exemption for "religious employers."  To qualify, an employer must satisfy four requirements:

(1) The inculcation of religious values is the purpose of the organization.

(2) The organization primarily employs persons who share the religious tenets of the organization.

(3) The organization serves primarily persons who share the religious tenets of the organization.

(4) The organization is a nonprofit organization as described in section 6033 (a)(1) and section 6033 (a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, as amended.

45 C.F.R. § 147.130 (a)(1)(iv)(B).  The referenced sections in 6033 of the Internal Revenue Code refer to "churches, their integrated auxiliaries, and conventions or associations of churches" and "the exclusively religious activities of any religious order" that are tax-exempt under 26 U.S.C. § 501(a).

Defendants adopted the definition of "religious employer" in the final regulations, but also created a "temporary enforcement safe harbor" for plans offered by certain entities not defined as religious employers, but that are nonetheless non-profit organizations with religious objections to contraceptive coverage.  77 Fed. Reg. 8725, 8727 (Feb. 15, 2012).  The safe harbor criteria are as follows:

(1) The organization is organized and operates as a non-profit entity.

(2) From February 10, 2012 onward, contraceptive coverage has not been provided at any point by the group health plan sponsored by the organization, consistent with any applicable state law, because of the religious beliefs of the organization.

>    (3) The group health plan sponsored by the organization (or another entity on behalf of the plan, such as a health insurance issuer or third-party administrator) provides to plan participants a prescribed notice indicating that the plan will not provide contraceptive coverage for the first plan year beginning on or after August 1, 2012.
>
>    (4) The organization self-certifies that it satisfies the three criteria above, and documents its self-certification in accordance with prescribed procedures.

77 Fed. Reg. 16,501, 16,504 (March 21, 2012).  Particularly relevant to Plaintiff Franciscan is that safe harbor covers institutions of higher education and the issuer of their student health insurance plans if the institution and its plan also satisfy the four criteria.  77 Fed. Reg. 16,456-57.  Safe harbor remains in effect until August 1, 2013.  Any plan with a plan year beginning on or after that date will no longer be protected from enforcement.  *Id*.

Although the ACA passed into law on March 23, 2010, the breadth of the legislation has required further rulemaking prior to enforcement.  On March 21, 2012 Defendants published an "advance notice of proposed rulemaking" ("ANPRM") specifically intended to begin addressing Plaintiffs' concerns: "[Defendants] would establish alternative ways to fulfill the requirements of [the ACA] when health coverage is sponsored or arranged by a religious organization that objects to the coverage of contraceptive services for religious reasons and that is not exempt under the final regulations published February 15, 2012."  77 Fed. Reg. 16,501.  According to Defendants' own statement in the proposed rules, the ANPRM "is the first step toward promulgating these amended final regulations . . . to develop alternative ways of providing contraceptive coverage without cost sharing in order to accommodate non-exempt, non-profit religious organizations with religious objections to such coverage."  *Id*.

On February 6, 2013, Defendants followed through on that statement by releasing a notice of proposed rulemaking (NPRM).[1] The NPRM proposes amendments to the ACA and opens a comment period until April 8, 2013. 78 Fed. Reg. 8456. One amendment would alter the definitions of "religious employer" under the ACA, eliminating the first three requirements so that an employer that "is organized and operates as a nonprofit entity and referred to in section 6033(a)(3)(A)(i) or (iii) of the [Internal Revenue] Code." 78 Fed. Reg. 8461. The purpose of that change is to "amend the criteria for the religious employer exemption to ensure that an otherwise exempt employer plan is not disqualified because the employer's purposes extend beyond the inculcation of religious values or because the employer serves or hires people of different religious faiths." 78 Fed. Reg. 8459.

Plaintiffs brought this action, seeking declaratory relief, on May 21, 2012. The Complaint recites nine causes of action: one under the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb – 2000bb-4; five under the First Amendment of the U.S. Constitution, and; three under the Administrative Procedure Act, 5 U.S.C. § 500 *et seq*. Defendants filed this Motion to Dismiss for Lack of Jurisdiction on August 6, 2012. The Motion has been fully briefed and is ripe for review.

### III. STANDARD OF REVIEW

Subject matter jurisdiction is a threshold matter that a court must decide prior to considering a claim's merits. *City of Health, Ohio v. Ashland Oil, Inc.,* 834 F.Supp. 971, 975 (S.D.Ohio 1993). Rule 12(b)(1) provides that the defendant may file a motion to dismiss based on a "lack of jurisdiction over the subject matter." Fed.R.Civ.P. 12(b)(1). The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Rogers v. Stratton*

---

[1] Defendants had represented to other courts, including the D.C. Circuit Court of Appeals, that they would issue an NPRM prior to the end of the first quarter of 2013. *See Wheaton Coll. V. Sebelius,* ___ F.3d ___, 2012 WL 6652505, at *1 (D.C. Cir. Dece. 18, 2012).

5

*Indus.*, 798 F.2d 913, 915 (6th Cir.1986). Attacks on subject matter jurisdiction may be either facial attacks or factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges the legal sufficiency of the complaint. When considering such a challenge, the court "must take the material allegations of the petition as true and construe[] [them] in the light most favorable to the nonmoving party." *Id*. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A legal conclusion couched as a factual allegation, however, need not be accepted as true. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

### IV. LAW & ANALYSIS

Defendants' Motion states two grounds for dismissal: (1) lack of ripeness; and (2) lack of standing. The Court first addresses the narrower issue of ripeness. Since the Court finds this dispute is not ripe for adjudication, it is not necessary to address standing.[2]

This Court is one of limited jurisdiction, granted authority under Article III of the U.S. Constitution to adjudicate only actual "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. The jurisprudence of justiciability doctrines has developed to ensure federal courts do not transgress that fundamental limitation. Ripeness is one such justiciability doctrine, "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 58 n. 18 (1993). Enforcing

---

[2] Although this Court does not formally reach the question of standing in this case, it notes that the majority of the fifteen courts that have found plaintiffs' ACA challenges lacked ripeness also found plaintiffs' lacked standing because they had not suffered an injury, or the injury alleged was not imminent. Recently, the Supreme Court issued a 5-4 decision in *Amnesty Int'l. USA v. Clapper* which also suggests Plaintiffs would fail a standing inquiry were this Court to reach the issue. 2013 WL 673253 at *3 (Feb. 26, 2013) (holding "Respondents' contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing – because the harm respondents seek to avoid is not certainly impending. In other words, respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.)

ripeness requirements "prevents a court from engaging in a premature adjudication of an issue, *particularly when an administrative decision is not yet final*." [emphasis added] *Conlon v. Sebelius*, 2013 WL 500835, ___ F.Supp.2d ___ (N.D. Ill. Feb. 8, 2013) (citing *National Park Hospitality Association v. Department of the Interior*, 538 U.S. 803, 807-8) (2003).

Jurisprudentially, ripeness is a subtle issue "whose threshold is notoriously hard to pinpoint." *Pittsburgh Mack Sales &Serv. Inc. v. Int'l. Union of Operating Eng'rs, Local Union*, 580 F.3d 185, 190 (3d Cir. 2009). To assist courts in pinpointing that threshold, the Supreme Court has stated that "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). In *Abbot Laboratories v. Gardner*, 387 U.S. 136, 149 (1967), the Court held that ripeness turns on "the fitness of the issue for judicial decision" and "the hardship to the parties of withholding court consideration."

The Sixth Circuit has elaborated on that guidance in setting out three "key factors" when assessing ripeness: (1) the likelihood that the harm alleged by the party will ever come to pass; (2) the hardship to the parties if judicial relief is denied at this stage in the proceedings; and (3) whether the factual record is sufficiently developed to produce a fair adjudication of the merits." *Dealer Computer Services, Inc. v. Dub Herring Ford*, 547 F.3d 558, 561 (6th Cir. 2008).[3] In observing that even a "final agency action" may not be ripe for judicial review, the Sixth Circuit directed courts to "avoid pre-enforcement challenges that do not permit enforcement agencies to refine their policies." *Ammex, Inc. v. Cox*, 351 F.3d 697, 708 (6th Cir. 2003). Unlike standing, which is assessed at the time the suit is filed, "[i]n determining ripeness, a court may consider

---

[3] While Plaintiffs correctly note that "the ripeness analysis 'is somewhat relaxed in the First Amendment context,'" it is not so relaxed as to vitiate the Sixth Circuit's ripeness analysis, nor so relaxed as to allow this Court jurisdiction over a matter which is not an actual case or controversy. *Miller v. City of Cincinnati*, 2008 WL 3890032, at *3 (S.D. Ohio Aug. 19, 2008).

events that occurred after the filing of the complaint." *Newark Branch, NAACP v. Millburn Township*, 1990 WL 238747 at *4 (D.N.J. Dec. 27, 1990) (citing, e.g., *American Motorists Ins. Co. v. United Furnace Co.*, 876 F.2d 293, 302 n. 4 (2d Cir. 1989).

Finally, while this Court is not bound by the decisions of the other courts that have reviewed challenges to the ACA brought by similar non-profit religious organizations, the Court notes that, to date, no fewer than fifteen federal courts, including two others in the Sixth Circuit, have found these challenges were not ripe for adjudication, most of them also found the plaintiffs lacked standing. *See, e.g., Roman Catholic Diocese of Dallas v. Sebelius*, No. 3:12-CV-1589-B, 2013 WL 687080 (N.D. Tex. Feb. 26, 2013); *Conlon v. Sebelius*, No. 1:12-cv-3932, 2013 WL 500835 (N.D. Ill. Feb. 8, 2013); *Archdiocese of St. Louis v. Sebelius*, No. 4:12-cv-924-JAR, 2013 WL 328926 (E.D. Mo. Jan. 29, 2013); *Roman Catholic Archbishop of Washington v. Sebelius*, No. 12-cv-0815 (ABJ), 2013 WL 285599 (D.D.C. Jan. 25, 2013); *Most Reverend Lawrence T. Persico v. Sebelius*, No. 1:12-cv-00123-SJM, 2013 WL 228200 (W.D. Pa. Jan. 22, 2013); *Colo. Christian Univ. v. Sebelius*, No. 11-cv-03350-CMA-BNB, 2013 WL 93188 (D. Colo. Jan. 7, 2013); C*atholic Diocese of Peoria v. Sebelius*, No. 1:12-cv-01276, 2013 WL 74240 (C.D. Ill. Jan. 4, 2013); *Univ. of Notre Dame v. Sebelius*, No. 3:12-cv-00523, 2012 WL 6756332 (N.D. Ind. Dec. 31, 2012), *appeal noticed* (6th Cir. Mar. 1, 2013); *Catholic Diocese of Biloxi v. Sebelius*, No. 1:12-cv-00158, 2012 WL 6831407 (S.D. Miss. Dec. 20, 2012); *Most Reverend David A.Zubik v. Sebelius*, No. 2:12-cv-00676, 2012 WL 5932977 (W.D. Pa. Nov. 27, 2012); *Catholic Diocese of Nashville v. Sebelius*, No. 3-12-0934, 2012 WL 5879796 (M.D. Tenn. Nov. 21, 2012); *Legatus v. Sebelius*, No. 12-12061, 2012 WL 5359630 (E.D. Mich. Oct. 31, 2012); *Nebraska v. U.S. Dep't of Health & Human Servs.*, No. 4:12-CV-3035, 2012 WL 2913402 (D. Neb. July 17, 2012); *Wheaton Coll.v. Sebelius*, No. 12-5273, 2012 WL 6652505 (D.C. Cir. Dec.

18, 2012) (affirming in part and holding in abeyance appeals in *Wheaton Coll. v. Sebelius*, Civil Action No. 12-1169 (ESH), 2012 WL 3637162 (D.D.C. Aug. 24, 2012), and *Belmont Abbey Coll. v. Sebelius*, 878 F.Supp.2d 25 (D.D.C. 2012)).[4]

### A. First Factor: Likelihood the Alleged Harm Will Ever Come to Pass

For the same reasons discussed by courts in the aforementioned decisions, this Court finds Plaintiffs' claims lack ripeness and are not fit for adjudication. Considering the first of three "key factors" of ripeness, the harm alleged is unlikely to "ever come to pass." Currently, Plaintiffs are both protected from ACA enforcement actions by the "safe harbor" provision. This "safe harbor" persists until Plaintiffs' new plan year begins on January 1, 2014.[5] *Plaintiffs' Memorandum in Opposition*, Doc. 31 at 15. In addition to the "safe harbor" protections, Defendants have represented to this Court, and numerous other federal courts, that they "would *never* enforce 45. C.F.R. § 147.130(a)(1)(iv) in its [then] current form against [plaintiff, a non-profit religious organization,] or those similarly situated as regards contraceptive services." *Wheaton Coll.*, No. 12-5273, 2012 WL 6652505 (D.C. Cir. Dec. 18, 2012). This Court agrees with the D.C. Circuit that "[w]e take the government at its word and will hold it to it." *Id*. Although the Court need not accept a government agency's representations of its intent, generally, government agencies are presumed to act in good faith. *Belmont Abbey College*, 878 F.Supp.2d 25, 36-7 (D.D.C. 2012) (citing various).

Defendants' subsequent promulgation of amendments to the ACA in the NPRM, however, demonstrates they are acting in good faith to address Plaintiffs' concerns. In fact, due

---

[4] The Court also notes, but finds wholly unpersuasive, two decisions representing a minority position, which have found similar claims to those here justiciable. *See Roman Catholic Diocese of Forth Worth v. Sebelius*, No. 4:12-cv-00314-Y-TRM (N.D. Tex. Jan. 31, 2013); *Roman Catholic Archdiocese of N.Y. v. Sebelius*, No. 12 Civ. 2542(BMC), 2012 WL 6042864 (E.D.N.Y. Dec. 4, 2012).

[5] As noted in Section II of this Opinion & Order, Plaintiff Franciscan's health plans are also protected from ACA enforcement because they are deemed "grandfathered," though some plans of Plaintiff MCC appear to have lost "grandfathered" status.

9

to the NPRM's amendments, the alleged harm is virtually certain not to occur.  The proposed regulations in the ANPRM which Plaintiffs originally challenged have been amended specifically to address Plaintiffs' concerns.  The definition of "religious employer" in the ANPRM, which Plaintiffs contend is too narrow to protect them from ACA enforcement, has been significantly broadened so that non-profit religious organizations such as Plaintiffs are not required to provide contraceptive services as part of their health plans, regardless of whether their primary mission is the inculcation of religion or whether they predominantly serve adherents of their own beliefs.  Plaintiffs have not made arguments to this Court with regard to the amended regulations.  Moreover, the amendments remain ongoing, with the comment period on the NPRM still open.[6]

Thus, regulations in the ANPRM which Plaintiffs allege would harm them have now been supplanted by regulations in NPRM, which move significantly in the direction of Plaintiffs' position, and thus the alleged will not occur unless some bizarre and unforeseeable occurrence led Defendants' to revert to the previous regulations.  A bizarre and unforeseeable occurrence is, by definition, not likely to occur.  Plaintiffs have, therefore, failed to persuade the Court their case satisfies the first ripeness factor.

### B. Second Factor: Hardship to the Parties if Judicial Relief is Denied

As for the second ripeness factor, hardship to the parties if judicial relief is denied at this stage in the proceedings, the Court finds there is no significant hardship to the parties for denying judicial relief at this stage.  In fact, it is probable that granting judicial relief at this stage would create more hardship to the parties.  As the NPRM amendments are not yet final and there

---

[6] Plaintiffs' argument that, at the very least, their APA claims should be found ripe is unavailing.  Their allegations that Defendants have not engaged in notice and comment rulemaking with regard to the regulations that Plaintiffs challenge is undercut by the fact that notice and comment rulemaking on those very regulations is occurring at this moment.

10

has been insufficient time for parties to determine and brief how the NPRM changes will affect them.  Any ruling at this juncture would simply add to the confusion and muddle the mushrooming ACA jurisprudence.

Although Plaintiffs are not currently having the regulations at issue enforced against them, they argue that the "imminence" of the regulations coming into effect has hampered their financial planning.  It is unclear what the preparation injury could be given that there are no final regulations yet promulgated for which to prepare.  Defendants repeatedly informed Plaintiffs and the Court that the ANPRM regulations were not final and would never be enforced against Plaintiffs.  If Plaintiffs chose to prepare for an eventuality that always appeared unlikely to ever occur, that is a hardship they inflicted upon themselves.  Now, the NPRM amendments have made it even less likely Plaintiffs will ever be affected by the mandate to provide the essential women's reproductive health services at issue here.

Plaintiff Franciscan also alleges current hardship in that it stopped offering health insurance to its students for fear of one day having to provide coverage for contraception.  It is gravely unfortunate that Franciscan's students have lost the opportunity to receive health insurance coverage from the University.  To the extent Franciscan claims its decision to discontinue providing student insurance is a hardship to itself, however, the hardship is self-inflicted.  A plaintiff cannot injure itself while fleeing a phantom specter spawned by the plaintiff's own unsubstantiated fears and then claim the defendant caused the injury.  This is particularly the case when, as here, Defendants explicitly stated, under penalty of contempt, they would never the harm Plaintiffs feared.

Plaintiffs have, therefore, failed to persuade the Court that their alleged hardships favor adjudication of their claims at this juncture.

### C. Third Factor: Whether the Factual Record is Sufficiently Developed

The third ripeness factor, whether the factual record is sufficiently developed to produce a fair adjudication of the merits, also indicates this dispute is not ripe for adjudication. Plaintiffs challenged particular ANPRM regulations that are no longer proposed by Defendants. Any decision on Defendants' former proposal would, at this point, be nothing more than an impermissible advisory opinion. The parties have not yet had the opportunity to study potential ramifications of Defendants' amended regulations in the NPRM. There is no factual record whatsoever that would allow this Court to adjudicate a challenge to the amended regulations. Plaintiffs have also failed to persuade the Court that the factual record is sufficiently developed to produce a fair adjudication of the merits at this time.

In summary, the Court finds each of the Sixth Circuits three "key factors" to determine ripeness strongly disfavor finding this case ripe for adjudication. The "safe harbor" provision, which protects Plaintiffs from enforcement presently, coupled with ongoing process to amend the ACA regulations to address Plaintiffs' concerns, which is substantiated by the recently published NPRM, makes the harm Plaintiffs allege unlikely to ever occur. Thus, since the dispute is not ripe, this Court lacks subject matter jurisdiction to adjudicate the merits of Plaintiffs' claims and the Court must dismiss Plaintiffs' entire claim.

### V. CONCLUSION

For the foregoing reasons Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. 23) is, hereby, **GRANTED**. As a result of this Order, all other pending motions in this case

(Doc. 25, Doc. 38, Doc. 39, Doc. 40, and Doc. 47) are **MOOT** and, accordingly, **DISMISSED**.

This case is **DISMISSED**.

    **IT IS SO ORDERED.**

                                               **s/ Algenon L. Marbley**
                                            **ALGENON L. MARBLEY**
                                            **UNITED STATES DISTRICT JUDGE**

    **DATED: March 22, 2013**